Acceleration Bay v. Activision Blizzard Acceleration Bay v. Activision Blizzard A port ordering algorithm must provide a sequence of port numbers. Smart clients do not provide a sequence of port numbers, so reversal is warranted. A port ordering algorithm may be reordered by the seeking computer when determining the order in which to dial the ports of each portal computer. What the specification makes very clear throughout is that a port ordering algorithm has to provide a sequence of port numbers. How is confining port ordering a logarithm to solely ordering ports by way of their port numbers the broadest reasonable construction, particularly when the illustrative claim language doesn't include any reference to port numbers? It is the only reasonable construction, and that is because given that a port ordering algorithm is not a known term in the art, we would look to the specification where it defines exactly what the port ordering algorithm does. It identifies the problem. There are potentially 65,000 ports that a seeking computer could attempt to contact, and it says that dialing a port is a slow process. You're on appendix 112, column 11. 1158. So since the dialing of a port is a relatively slow process, it would take the seeking computer a long time to locate the column port of a portal computer. That's the problem. The solution. To minimize this time, the broadcast technique uses a port ordering algorithm. That's the first time the term appears in the patent outside of the abstract, and it says what does the port ordering do? It identifies the port number order that a portal computer... And one embodiment uses a hashing algorithm to identify the port order. That is a specific example of how the algorithm could be used, and that's what my colleagues must have been referring to on page 21. It's not the only embodiment for port ordering algorithm, but a hashing algorithm could be used to generate the sequence of port order numbers. But the only references in the specification to the port ordering algorithm are generating a series of port numbers. The whole point of this invention is there's a very large universe of potential ports you could connect to. There's 65,000, and it takes, in computer time, it's a slow process to contact a port. So you want an algorithm that will give you a meaningful sequence of port numbers. There is nothing in the specification that talks about the algorithm generating a sequence of portal computers to contact. Before we leave port ordering a logarithm, since you seem to be headed for portal computers, you argue that we should find some of Activision Blizzard's arguments waived in 45 and 46 of the blueprint. That's correct. Wasn't your motion to exclude those arguments before the PTAB denied? The motion was denied. Then how were the arguments waived? We submit that the PTAB was confused. No, no. How were the arguments waived if the PTAB rolled in their favor? Well, Activision waived the argument by not addressing it until the final reply brief in the case. So they're not permitted to raise a new argument in the final reply brief. So you want us to determine that there was a procedural waiver when the board found there wasn't? Correct. It's not necessary to reverse the decision here, but we think that the board abused its discretion. In the initial petition, all the way until the reply brief, the position that Activision took is that the port ordering algorithm generates a sequence of port numbers. Okay, but that's not entirely the case with respect to all embodiments. If you look at column 12, line 49, it says in an alternate embodiment, the seeking computer selects a port number according to the algorithm and dials each portal computer at that port number. Yes, and that's the language that the board relied on and that Activision relied on. What's critical is the very next sentence. It says that if no acceptable column port is found, then the seeking computer selects the next port number and repeats the process. So in that embodiment, the algorithm generates a sequence, let's say, port 80, port 120, port 150. That's the sequence. It starts at the first portal computer and tries 80. It goes to the second and tries 80. It goes to the third and tries 80. Then the port ordering algorithm says the next one to try is 100, and it goes to each one. 120. Or 120, whatever. But the point is that the output of the algorithm is a sequence of port numbers. If an algorithm does not at least give a sequence of port numbers, it cannot be a port ordering algorithm. It's defined explicitly in the passage. It says, what is a port ordering algorithm? It gives you a sequence of port orders. The only language in the specification that the board relied on and that Activision relied on actually supports our position. They just omit the critical second sentence. So turning to smart clients. Smart clients says we're going to generate an algorithm for telling you which server to connect to. Smart clients says nothing about selecting port numbers. Doesn't the ordering of sockets necessarily entail the ordering of port numbers since a socket is a paired address and port? Not as implemented in smart clients. So I would direct your attention to Appendix 1238. Now, the way a client, using smart clients, seeks to connect to the servers, it gets a certificate. And the certificate says, here are the servers that are available to you. And if you look on that page of the appendix, the servers are identified without any port numbers. So there's just a list of server names. The algorithm in smart clients says, contact this server first, then this server, then this server. That's the only output of the algorithm. After that server is identified, when the client attempts to contact the server, it says, okay, I'm going to use the HTTP protocol, so I know that I'm going to use port 80 to connect. So it appends the port number to the server. But the algorithm in smart clients does not identify the port number. The output is only the server. It provides a list of servers, and then the client knows to add the single port number that's used for all the servers, but that's not done by the algorithm. So the algorithm does not provide any port numbers. That's why reversal is warranted. And VDOT has no impact on that. You don't even seem to acknowledge VDOT on appeal. It's not in your blue brief, isn't it? I believe it was discussed briefly in the blue brief, but certainly it's discussed in the reply brief. But there's only a single sentence that's relied on in VDOT. All it says is the URL naming convention of appending a colon plus a port number is maintained for naming servers running on non-standard ports. That's the entirety of VDOT that is relied upon. Do you consider that relevant? It is not relevant. All that that means is that smart clients, the chat function, works on HTTP. So when the server is identified by the algorithm, the client knows to add port number 80. All that that sentence in VDOT says is if you're running a different application, not the chat function, maybe it's, say, a weather service, instead of port 80, you might append port 400. But that's done after the algorithm selects the server. There is nothing in VDOT that says that the port numbers for the servers can vary from server to server. And certainly nothing that says that the algorithm that is selecting the servers knows or has anything to do with the port numbers. Okay. You're into your rebuttals. Why don't we get to the other side and we'll save the remaining time. Thank you. Good morning. Good morning. May it please the Court. Andrew Sommer on behalf of the Appleese. I'm going to focus today on the port ordering algorithm as the appellant focused on that particular issue. There are two things of note here. I think one is the claim language. We need to start with the claim language when we decide what a port ordering algorithm means in the context of Claim 1. And in the context of Claim 1, we note that there is no offer or any kind of suggestion that there are this broad universe of ports for each portal computer. In fact, the claim belies that argument. It says providing an identification of a portal computer or a plurality of portal computers. Cite your record. Oh, yes, sir. Sure, Your Honor. This is appendix page 121, Claim 1. Line or column 29. Yes, it's column 29. Lines 28 to 30 is around where I am, Your Honor. The portal computer or the plurality of portal computers having a communications port, one port, or a plurality of ports. So this claim covers an instance in which a portal computer can have only one allocated port. TCPIP, which is recited in some of the dependent claims, particularly if you see Claim 16, which depends on a non-assertive claim in this particular case, suggests that TCPIP is one form of a protocol that could be used here. And yes, as counsel noted, that has 65,000 some odd ports, and you would need to do this searching. Claim 9 also discusses dynamic allocation of ports. Again, Claim 9 is not before the court. That concept is missing entirely from Claim 1. Claim 1 was drafted in a way to be extremely broad. Claim 1 was drafted in a way to cover an instance in which each portal computer, a number of portal computers are allowed, and they each have a single port that is allocated. And in that circumstance, based on the plain language of the claim, that communications port is the call-in port. And so what does Smart Clients show? Smart Clients shows an instance in which services, service-specific hosts, are reordered. And what does that mean in the context of Smart Clients? Smart Clients discloses that various applications can be run on these Smart Clients. One is FTP, one is Telnet, and another one is the Internet chat. And that's what the issues before the board focused on was this chat application. And chat was run on HTTP as described in Smart Clients. HTTP is allocated to standard Port 80. That's described in the patent itself and discussed by the experts. Both experts agree it's on Port 80. But when you take that disclosure in view of a dot, which says you can implement a Smart Client on a non-standard port, you can reach a conclusion that it would have been obvious to do so, just like our expert explained in Appendix 1097 and 1098, that you could implement each Smart Client on a different non-standard port, such that when you order the servers and the services, you also have to reorder the ports. You have to do that because ports are used to gain access to individual applications running on your computer. If you think of it like this, you may have a browser window open on your computer. You may also be using email. Those two applications are attached to separate ports in your computer. Communications inbound to your email are not coming through your web browser. They're not coming through HTTP. The same thing applies when you use these non-standard ports. They attach to a port. Therefore, if you reordered the servers without reordering the ports, you would not be able to find the application, the chat application in Smart Clients. Therefore, we submit that there actually is substantial evidence, there is evidence that supports the notion that ports are reordered when the Smart Clients application reorders and orders the servers according to load. Regarding the issue of waiver, I just want to briefly mention that. There was an argument in reply that the board was confused and that their argument was improperly viewed as pertaining only to Exhibit 1024. There's actually two rationales in the board's opinion at Appendix A62. The second rationale was to the extent that you want us to exclude these other portions of the reply, patent owner, you haven't explained why. And that was our point. But in any event, it was directly responsive. This argument is all about the plain language of the claim. What the claim says and why their argument that you can only order ports or that an algorithm that orders a URL plus a port cannot be a port ordering algorithm is actually belied by the language of the claim. So too is the argument made by the appellant in this particular case that there must be multiple ports on each portal computer that need to be individually reordered. The claim suggests to the contrary, and we think that the claim language controls. So unless your honors have any other questions about any other parts of the appeal, I'll cede the rest of my time. Thank you. Thank you very much. Very quickly, your honors. There is nothing in Smart Clients, or VDOT for that matter, about reordering ports that are used for different competing services. That concept isn't in there, and that's entirely important. There's no citation in any of the briefing or the record to that concept being found in Smart Clients or VDOT. So what we're left with is the purpose of Smart Clients, and what it does is it generates a list of servers. There's no port information even associated with that, and then after the algorithm generates the list of servers, the predefined single port number is added. In the claim language itself, the where-in clause at the end says that the communication ports can be reordered. Ports is multiple, so there have to be multiple ports that can be reordered. And if you look in the file history at the evolution of the claim, it was originally drafted only with communication ports. There was a 112 rejection where the examiner said that some of the dependent claims refer to a particular port. And then there was an amendment of one or more ports, and the purpose of that amendment was to resolve that 112 objection by giving an antecedent basis for the subsequent discussion of the single port. Where's that in the record? It's Appendix 946. Okay, thank you. And that's the rejection. And then Appendix 963 is the amendment, and also Appendix 945 explains the basis for the amendment. Are there any questions I should address? Your time is up. Thank you. We thank both sides, and the case is submitted.